UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

ADA CEPEDA,

     -and-

MINOR CHILD "N.R.", By and through his mother Paula
Cepeda as next friend,

               *Plaintiffs*,

     -against-

1452 REALTY LLC, PATRICK MANGAN, MICHAEL
MANGAN, and MARASH PALUSHAJ,

               *Defendants*.

____ Civ. _____

**COMPLAINT AND JURY
DEMAND**

## PRELIMINARY STATEMENT

1.     Plaintiffs Ada Cepeda ("Plaintiff" or "Ms. Cepeda") and Minor Child N.R.[1], by

and through his mother Paula Cepeda, bring this action to enjoin and remedy Defendants'

continuing violations of federal, state, and local laws prohibiting discrimination on the basis of

disability and guaranteeing the rights of disabled tenants to accessible housing.

2.     Ms. Cepeda is a rent stabilized tenant at 1452 Beach Avenue, Apartment 25,

Bronx, New York 10467, which is located on the fifth floor of a walk-up building.  Ms. Cepeda

suffers from significant physically disabilities, including asthma, lower back pain, and bilateral

arthritis in her knees, that make it painful and unsafe for her to climb up and down the five

flights of stairs to her apartment.  Ms. Cepeda's minor grandson N.R., who resides in the

---

[1] The initials N.R. will be used for Ms. Cepeda's minor grandson in accordance with Federal Rule of Civil
Procedure 5.2

apartment and also suffers from asthma, similarly has great difficulty climbing up the five flights of stairs to access the family's home.

3.     Ms. Cepeda has repeatedly requested a reasonable accommodation of transfer to a lower floor apartment to accommodate her physical disabilities and those of her minor grandson.

4.     Defendants 1452 Realty LLC ("Defendant 1452 Realty") the owner of 1452 Beach Avenue, Marash Palushaj, who is, upon information and belief, the Managing Agent, Patrick Mangan, who is, upon information and belief, the Head Officer, and Michael Mangan, who is, upon information and belief, an Officer, have repeatedly denied Ms. Cepeda's requests for a reasonable accommodation.

5.     Although the Fair Housing Act, the New York State Human Rights Law, and the New York City Human Rights Law require landlords to provide reasonable and necessary accommodations to residents with disabilities, Defendants have refused Ms. Cepeda's requests to accommodate her and her grandson's disabilities, including those made through counsel.

6.     Defendants' conduct flies in the face of the Fair Housing Act, the New York State Human Rights Law, and the New York City Human Rights Law.  Ms. Cepeda and her grandson N.R. now bring this action to seek injunctive and declaratory relief directing Defendants to comply with their basic legal obligations as landlords and to compensate Plaintiffs for Defendants' unlawful conduct.

## PARTIES

7.     Plaintiff ADA CEPEDA is the tenant at 1452 Beach Avenue, Apartment 25, Bronx, New York 10460, where she has lived for approximately ten years.

8.     Plaintiff N.R., who is eight years old appears by and through his mother Paula

2

Cepeda, lives at 1452 Beach Avenue, Apartment 25, Bronx, NY 10460.

9.  Upon information and belief, MARASH PALUSHAJ is the Managing Agent and maintains his principal office at 271 EAST 205TH STREET, BRONX, NEW YORK, 10467.

10.  Upon information and belief, MICHAEL MANGAN is the Head Officer according to the property's multiple dwelling registration and his principal office is located at 271 EAST 205TH STREET, BRONX, NEW YORK, 10467. He owns, controls, and/or manages at least twenty-two buildings throughout New York City.

11.  Upon information and belief, PATRICK MANGAN is an Officer according to the property's multiple dwelling registration and his principal office is located at 271 EAST 205TH STREET, BRONX, NEW YORK, 10467. He owns, controls, and/or manages at least twenty-two buildings throughout New York City.

12.  Defendant 1452 REALTY LLC is a limited liability corporation with its principal office located at 271 EAST 205TH STREET, BRONX, NEW YORK, 10467. 1452 REALTY is one of at least twenty-two corporations that Patrick and Michael Mangan own, control and/or manage.

## JURISDICTION AND VENUE

13.  This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 for civil actions arising under the laws of the United States, 28 U.S.C. § 1343 for actions under laws providing for the protection of civil rights, and 28 U.S.C. § 1367 for related state and local claims.

14.  Venue is proper in the Southern District of New York pursuant to 28 U.S.C. § 1391(b).  The Southern District of New York is the judicial district in which a substantial part

3

of the events or omissions giving rise to the Plaintiffs' claims occurred.  Plaintiffs reside in the Southern District of New York.

## JURY DEMAND

15.     Plaintiffs hereby demand a trial by jury.

## STATUTORY AND REGULATORY FRAMEWORK

### The Fair Housing Act

16.     Title VIII of the Civil Rights of 1968, also known as the Fair Housing Act ("FHA"), as amended by the Fair Housing Amendments Act ("FHAA"), 42 U.S.C. § 301 *et seq.*, states that "it shall be unlawful" to "discriminate against any person in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with such dwelling, because of a handicap of . . . that person."  42 U.S.C. § 3604(f)(2)(A).  Discrimination includes "a refusal to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford such person equal opportunity to use and enjoy a dwelling."  42 U.S.C. § 3604(f)(3)(B).

17.     A person is defined as "handicapped" if she has "a physical or mental impairment which substantially limits one or more of such person's major life activities."  42 U.S.C. § 3602 (h)(1); *see* 24 C.F.R. § 100.201.  "Major life activities" are functions such as "caring for one's self, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning and working."  24 C.F.R. § 100.201(b).

18.     Federal regulations implementing the FHA require dwelling units to be accessible by handicapped persons so as to allow them use and enjoyment of all parts of the building, including public and common use areas.  *See* 24 C.F.R. §§ 100.65(b)(4), 100.204.

4

## The New York State Human Rights Law

19.     The New York State Legislature enacted the Human Rights Law ("NYSHRL"),

N.Y. Exec. Law § 290 *et seq.*, to, among other things, "eliminate and prevent discrimination in

. . . housing accommodations."  N.Y. Exec. Law § 290(3).

20.     The NYSHRL provides, in pertinent part:

> (a)  It shall be unlawful discriminatory practice for the owner, . . . or managing agent of . . . a housing accommodation . . . or any agent or employee thereof . . .
>
> > (2)  To discriminate against any person because of . . . disability . . . in the terms, conditions or privileges of sale, rental or lease of any such housing accommodation or in the furnishing of facilities or services on connection therewith.

N.Y. Exec. Law § 296(5).

21.     The NYSHRL also provides that:

> 18.  It shall be an unlawful discriminatory practice for the owner . . . or managing agent of . . . housing accommodations:
>
> > (2) To refuse to make reasonable accommodations in rules, policies, practices, or services, when such accommodations may be necessary to afford said person with a disability equal opportunity to use and enjoy a dwelling . . . .

N.Y. Exec. Law § 296(18)(2).

22.     The NYSHRL defines "disability" as "a physical, mental or medical impairment

resulting from anatomical, physiological, genetic or neurological conditions which prevents the

exercise of a normal bodily function or is demonstrable by medically accepted clinical or

laboratory diagnostic techniques."  N.Y. Exec. Law § 292(21).

5

23.     The NYSHRL also states it is an unlawful discriminatory practice "to represent that any housing accommodation or land is not available for inspection, sale, rental, or lease when in fact it is so available."  N.Y. Exec. Law § 296 (5)(a)(1).

24.     The NYSHRL defines "housing accommodation" as "any building, structure, or portion thereof which is used or occupied . . . as the home, residence or sleeping place of one or more human beings."  N.Y. Exec. Law § 292(10).

### The New York City Human Rights Law

25.     The New York City Human Rights Law ("NYCHRL") provides, in pertinent part:

(a)  It shall be an unlawful discriminatory practice for the owner, lessor, . . . or managing agent of . . . a housing accommodation, . . . or any agent or employee thereof:
. . .
(1)  Because of the actual or perceived . . . disability . . . of any person . . .

(b)  To discriminate against any such person or persons in the terms, conditions or privileges of the sale, rental or lease of any such housing accommodation or an interest therein or in the furnishing of facilities or services in connection therewith . . .

N.Y.C. Admin. Code § 8-107(5)(a).

26.     The NYCHRL also makes it "an unlawful discriminatory practice for the owner, lessor, . . . or managing agent of . . . a housing accommodation" to "refuse to sell, rent, lease" a housing accommodation to any person or to "represent . . . that any housing accommodation or an interest therein is not available for inspection, sale, rental or lease when in fact it is available" because of a person's disability.  N.Y.C. Admin. Code § 8-107(5).

6

27.     The NYCHRL also makes it an "unlawful discriminatory practice for an owner, lessor, . . . or managing agent of . . . a housing accommodation" to "refuse or otherwise fail to engage in a cooperative dialogue within a reasonable time with a person who has requested an accommodation or who the covered entity has notice may require an accommodation related to disability." N.Y.C. Admin. Code § 8-107(28)(c).

28.     The NYCHRL defines "disability" as "any physical, medical, mental, or psychological impairment." N.Y.C. Admin. Code § 8-102.

29.     The NYCHRL defines "housing accommodation" as "any building, structure, or portion thereof which is used or occupied or is intended, arranged or designed to be used or occupied, as the home, residence or sleeping place of one or more human beings." N.Y.C. Admin. Code § 8-102.

## STATEMENT OF FACTS

30.     1452 Beach Avenue is a five-story multiple dwelling walk-up apartment building with thirty units.

31.     Ms. Cepeda lives in Apartment 25, which is a two-bedroom unit on the fifth floor, and has lived in the apartment for the past ten years. Ms. Cepeda currently resides in the apartment with her adult daughter and two minor grandchildren, ages eight and five.

32.     Because Ms. Cepeda's apartment is on the fifth floor and the apartment building does not have an elevator, Ms. Cepeda must walk up and down five flights of stairs in order to enter or exit her apartment.

**I.      Ms. Cepeda and Her Minor Grandson Suffer From Serious Disabilities That Make It Difficult For Them To Climb The Five Flights Of Stairs To Their Apartment.**

7

33.     Ms. Cepeda suffers from significant physical disabilities that severely limit her mobility and make it difficult for her to walk up and down the five flights of stairs to her apartment.

34.     Ms. Cepeda has asthma, lower back pain, and arthritis, including in both knees, which make it extremely painful and unsafe for her to traverse five flights of stairs to reach her apartment.  Walking up and down the five flights of stairs to her apartments causes Ms. Cepeda's legs to shake violently, induces acute lower back pain, and aggravates Ms. Cepeda's asthma attacks.  Due to her asthma, Ms. Cepeda must make frequent stops to catch her breath while walking up the stairs. Ms. Cepeda's doctor has told her to minimize her stair usage because her disabilities make it dangerous for her to climb up and down stairs. Ms. Cepeda has fallen twice on the building stairs, including in 2019, when she lost a tooth as a result of her fall.

35.     Because it is painful and unsafe for Ms. Cepeda to walk up and down the stairs to her apartment, Ms. Cepeda goes out only when absolutely necessary out of fear that she will fall down the stairs. Because going up and down her stairs causes her pain, this limits Ms. Cepeda's ability to do daily activities, such as going to physical therapy, doctor's appointments or going grocery shopping.

36.     Ms. Cepeda cannot carry her groceries and other items up the stairs to her apartment, and often must pay her neighbors to help carry all but the lightest items up the stairs for her.

37.     Even though it is very difficult for her, Ms. Cepeda is required to leave her apartment for work and to attend doctor's appointments. Ms. Cepeda's mental health has worsened as a result of the repeated denial of her reasonable accommodation request since the

8

immense pain endured by navigating the route to her apartment has exacerbated her depression. Ms. Cepeda's health conditions are chronic and she expects them to only get worse with time.

38.     Ms. Cepeda's minor grandson N.R., who resides with Ms. Cepeda, also suffers from asthma, which is often exacerbated by climbing up and down the stairs to their fifth-floor apartment. N.R. has been to the emergency room multiple times in 2020, including as recently as September of this year.

**II.     Defendants Refuse Ms. Cepeda's Requests For A Lower-Floor Apartment.**

39.     Ms. Cepeda made her first reasonable accommodation request in August of 2020. In or around August 16, 2020, Ms. Cepeda went to the management office located at 271 East 205th Street, Bronx, NY 10467 to pay her August rent. She spoke with someone named "Linda", an individual who identified herself as working for the building owner. At that time, Ms. Cepeda requested that she be offered a lower floor apartment because of her disabilities. In response, Linda refused Ms. Cepeda's request and advised that the landlord "did not do apartment transfers." During this encounter, another individual, who identified himself as the building owner "Mr. Mangan", was standing nearby and confirmed that Ms. Cepeda's request would not be granted because the building would not do apartment transfers.

40.     During this conversation, Linda asked Ms. Cepeda whether she would be moving out of her unit if she could no longer walk up and down the stairs to her apartment. Ms. Cepeda explained that if she could not move to a lower floor apartment because she lacked the money necessary to move.

41.     In early September 2020, Ms. Cepeda's neighbor in Apartment # 3 at 1452 Beach Avenue told Ms. Cepeda that she would be moving out of her first-floor apartment and suggested

9

that Ms. Cepeda try to move into the first-floor unit when it became vacant.

42.     In or around mid-September 2020, Ms. Cepeda learned that this first-floor unit –
Apartment #3 – was vacant when she saw construction workers renovating the unit. Ms. Cepeda
spoke with an individual involved in the construction and asked whether the apartment was
available to rent. Ms. Cepeda was directed to "contact the landlord." They stated they were
finalizing the floors and the apartment was almost done.

43.     Because Ms. Cepeda and Defendant 1452 Realty LLC were already engaged in
another litigation proceeding, Ms. Cepeda, through counsel, contacted Defendant 1452 Realty
LLC's counsel via email on September 21, 2020 to request that the first-floor unit be held for
Ms. Cepeda to view and that a transfer be arranged. Ms. Cepeda, through counsel, explained that
the transfer was needed because Ms. Cepeda suffered from pulmonary conditions as well as
several other conditions that impaired her ability to go up and down stairs. No response was
received.

44.     On September 24, 2020, Ms. Cepeda, through counsel, contacted Defendant 1452
Realty LLC's counsel to inquire about the first-floor vacancy. Again, no response was received.

45.     Following additional emails from Ms. Cepeda's counsel on October 2, 2020,
October 3, 2020, October 7, 2020, October 13, 2020, and October 15, 2020, Defendant 1452
Realty LLC's counsel responded on October 15, 2020 that the first-floor unit was not available,
nor were there other first-floor units available to rent.

46.     Shortly thereafter, Ms. Cepeda saw that despite Defendant 1452 Realty LLC's
statements to the contrary, the first-floor Apartment #3 was still undergoing renovation and new
tenants had not yet moved in to the unit.

47.     On October 29, 2020, Ms. Cepeda, through counsel, emailed Defendant 1452 Realty LLC's counsel a demand letter renewing her request to transfer to apartment #3, as a reasonable accommodation for her disabilities. In this letter, Ms. Cepeda also explained that the transfer was needed to accommodate Ms. Cepeda's minor grandson, who suffers from asthma and had difficulty climbing up and down the stairs to the family's home.

48.     Defendants have failed to respond to this request to date, nor have Defendants offered to engage in any cooperative dialogue regarding proposed alternative accommodations.

49.     In or around November 12, 2020 – more than two weeks after Ms. Cepeda sent a demand letter requesting that Defendants hold the vacant first floor unit in the building – Ms. Cepeda saw individuals moving into Apartment # 3.

## PRAYER FOR RELIEF

### COUNT I
### Violation of the Federal Fair Housing Act (42 U.S.C. § 3604)

50.     Plaintiffs repeat and re-allege paragraphs 1 through 59 of this Complaint as if fully set forth herein.

51.     The FHA prohibits discrimination in the rental of housing against qualified individuals with disabilities.  Discrimination includes refusing to make reasonable accommodations to afford those with disabilities equal opportunities to use and enjoy a dwelling. *See* 42 U.S.C. § 3604(f)(3)(B).

52.     Plaintiffs are qualified individuals with disabilities under the FHA.  An accommodation is necessary to afford Plaintiffs equal opportunity to use and enjoy their apartment.

53.     At all relevant times, Defendants have had actual and constructive knowledge of Plaintiffs' disabilities.

54.     Defendants have refused, and continue to refuse, to provide either Plaintiff a reasonable accommodation.

55.     Defendants' refusal to grant a reasonable accommodation for the Plaintiffs constitutes discrimination on the basis of disability in the provision of services or facilities in connection with the Plaintiffs' dwelling in violation of the FHA.

56.     The Plaintiffs have been harmed as a direct and proximate result of Defendants' violations of the FHA.

57.     Ms. Cepeda is an aggrieved person under the definition of the FHA because she has been the subject of a discriminatory housing practice.  *See* 42 U.S.C. § 3613(a)(1)(A).  As an aggrieved person, Ms. Cepeda can seek actual and punitive damages and injunctive relief.  42 U.S.C. § 3613(c).

58.     N.R. is an aggrieved person under the definition of the FHA because he has been the subject of a discriminatory housing practice.  See 42 U.S.C. § 3613(a)(1)(A).  As an aggrieved person, N.R. can seek actual and punitive damages and injunctive relief.  42 U.S.C. § 3613(c).

## COUNT II
## Discrimination Under The New York State Human Rights Law

59.     Plaintiffs repeat and re-allege paragraphs 1 through 67 of this Complaint as if fully set forth herein.

60.     The NYSHRL prohibits discrimination in the rental of housing against qualified

12

individuals with disabilities.  Discrimination includes refusing to make reasonable accommodations to afford those with disabilities equal opportunities to use and enjoy a dwelling. *See* N.Y. Exec. Law § 296(18)(2).

61.     Plaintiffs are qualified individuals with disabilities under the NYSHRL.  An accommodation is necessary to afford the Plaintiffs equal opportunity to use and enjoy their apartment.

62.     At all relevant times, Defendants have had actual and constructive knowledge of Plaintiffs' disabilities.

63.     Defendants have refused, and continue to refuse, to provide Plaintiffs a reasonable accommodation.

64.     Defendants' refusal to grant either Plaintiff a reasonable accommodation constitutes discrimination against Plaintiffs on the basis of their disability in the provision of services or facilities in connection with the Plaintiffs' dwelling in violation of the NYSHRL.

65.     Ms. Cepeda has been harmed as a direct and proximate result of Defendants' violations of the NYSHRL.

66.     N.R. has been harmed as a direct and proximate result of Defendants' violations of the NYSHRL.

## COUNT III
## Discrimination Under The New York City Human Rights Law

67.     Plaintiffs repeat and re-allege paragraphs 1 through 74 of this Complaint as if fully set forth herein.

68.     The NYCHRL prohibits discrimination in the rental of housing against qualified

13

individuals with disabilities.  Discrimination includes refusing to make reasonable accommodations to afford those with disabilities equal opportunities to use and enjoy a dwelling. *See* N.Y.C. Admin. Code § 8-107(5).

69.     Plaintiffs are qualified individuals with disabilities under the NYCHRL.  An accommodation is necessary to afford Plaintiffs equal opportunity to use and enjoy their apartment.

70.     At all relevant times, Defendants have had actual and constructive knowledge of Plaintiffs' disabilities.

71.     Defendants have refused, and continue to refuse, to provide either Plaintiff a reasonable accommodation.

72.     Defendants' refusal to grant a reasonable accommodation for either Plaintiff constitutes discrimination against Plaintiffs on the basis of their disability in the provision of services or facilities in connection with Plaintiffs' dwelling in violation of the NYCHRL.

73.     Ms. Cepeda has been harmed as a direct and proximate result of Defendants' violations of the NYCHRL.

74.     N.R. has been harmed as a direct and proximate result of Defendants' violations of the NYCHRL.

**COUNT IV**
**Violation of the New York City Human Rights Law**
**For Failure To Engage in Cooperative Dialogue**

75.     Plaintiffs repeats and re-alleges paragraphs 1 through 73 of this Complaint as if

14

fully set forth herein.

76.     Plaintiffs are disabled individuals as defined by the New York City Human Rights Law.

77.     The New York City Human Rights law requires that Defendants make a good faith effort to engage in a cooperative dialogue regarding reasonable accommodations.

78.     Defendants failed to engage in a cooperative dialogue because they failed to offer apartments as they became available both in the Plaintiffs' building and in other building's in the Defendants' portfolio.

79.     Instead, Defendants failed to offer any reasonable accommodations and concealed pertinent information regarding available apartments.

## RELIEF SOUGHT

WHEREFORE, based on the foregoing, Plaintiffs hereby request the following relief:

80.     A final judgment declaring that Defendants violated:

a.  The Federal Fair Housing Act, 42 U.S.C. § 3601 *et seq.*, and its implementing regulations; and

b.  New York State Human Rights Law, N.Y. Exec. Law § 290 *et seq.*, and its implementing regulations; and

c.  New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 *et seq.*, and its implementing regulations; and

81.     Injunctive relief requiring Defendants to immediately provide accessible accommodations to at a comparable rent to Plaintiffs on the first floor or second floor at 1452 Beach Avenue or at a comparable building; and

82.     An award of compensatory damages and punitive damages to Ms. Cepeda;

83.     An award of compensatory damages and punitive damage to N.R.; and

84.     An award of attorneys' fees and costs in the maximum amount permitted and/or provided for by law; and

85.     An award of other such relief that the Court deems just and proper.

Dated: January 14, 2021
       Bronx, New York

By: _____
Jean Fischman, Esq.
Chelsea Breakstone, Esq.
BRONX LEGAL SERVICES
369 East 148th Street, 2nd Floor
Bronx, NY 10455
Telephone:  (718) 928-3754
jfischman@lsnyc.org

*Attorneys for Plaintiff Ada Cepeda and Minor Child N.R., by and through his mother Paula Cepeda*

16